**Bryan v. Bryan**

*Peggy Lynn Ferber,* for plaintiff.
*Frederick N. Frank,* for defendant.

WETTICK, *J.,* October 19, 1992—This is a divorce action involving the equitable distribution of several million dollars of marital assets. In lieu of a lengthy hearing, the parties submitted their evidence primarily through depositions of the parties and other factual and expert witnesses, expert reports, and the production of financial records.

The financial records, reports and depositions that were provided to me fill four sizable boxes. These documents describe for the period following the parties' marriage in 1978 practically every expenditure that the parties made, practically every asset that the parties own at this time, practically every transaction involving the purchase or sale of any assets, and complete income tax and other financial records. The information is extensive because the cash flow during the marriage exceeded $15 million.

Neither party is a public figure. The husband is a 69-year-old retired businessman and the wife is a photographer whose work does not appear to be well-known outside of the Pittsburgh area. The parties were the only persons interested in this case until the husband's son was identified as a steady companion of the Duchess of York. Thereafter, the media apparently has become very interested in the details of the lives of family members and other friends and associates of the husband's son.

The subject of this opinion and order of court is a petition filed by the husband to seal the record of these

equitable distribution proceedings. At the time this petition was presented, I had already entered an award which decided the parties' claims for economic relief. This award—dated August 11, 1992—was accompanied by a 29-page memorandum which set forth the relevant facts and my legal conclusions.[1]

The husband's petition to seal the record was presented in open court on September 18, 1992. Members of the media were present at the argument and this petition received substantial publicity. As of this date, only the wife has filed any legal papers opposing the husband's petition.

The husband has filed an affidavit in support of his petition. In his affidavit, he avers that because of the circumstances within his immediate family, the media has begun a series of intrusive and offensive investigations into his personal affairs. Since his retirement as CEO of Copperweld Corp. in February 1988 and his resignation from numerous boards of directors, he has led a life as a retired private citizen. The details of his personal situation are private and the publication of these details serves no useful purpose to the community. He has been ardently pursued at his homes in Florida, Rhode Island and London by the paparazzi and the press. This invasion into his privacy has caused him and his extended family annoyance and embarrassment.

---

1. The only remaining matters are post-trial motions. Both parties have filed motions for post-trial relief in which they express disagreement with the manner in which I valued or otherwise dealt with some marital assets and the manner in which I divided the assets.

The wife has filed an affidavit in support of her opposition to the motion. She avers that substantial portions of the record should be made available to the public because the case is of enormous precedential value and the wholesale sealing of the record would frustrate the basic system of justice which is dependent on the ability to study major case law precedent. She further avers that the public should have access to the pleadings, opinions, expert reports and depositions of the experts to permit students of the law to study the critical legal issues raised by this case and to permit guidance to be given to the bar and the public in similar situations in the future.

At the time that the husband presented his petition to seal the record, I advised counsel for the husband that where, as in the present case, the other party is opposing the petition, I am reluctant to deny public access to my equitable distribution award and my lengthy memorandum explaining my reasons for entering that award. In these circumstances, I am also reluctant to seal the motions for post-trial relief (which set forth the areas in which the parties disagree with my memorandum and award) and the petitions, answers and affidavits filed in connection with these proceedings to seal the record. In circumstances in which a party is opposing a petition to seal the record, disclosure of these records serves the legitimate function of allowing sufficient scrutiny of the court's handling of the matter to permit the public to know whether the court is exercising its judicial functions in a fair and unbiased manner. At the argument on the petition to seal the record, counsel for the husband indicated that the husband's petition was directed primarily to the detailed financial information that the parties submitted and

that counsel for the husband would not question my decision to allow public access to my August 11, 1992, memorandum and equitable distribution award.[2]

The sole issue before me is whether the record of this divorce proceeding that will remain available to the public should include the four boxes of records, reports and depositions that I previously described. The standard for governing the husband's request is set forth in *Katz v. Katz*, 356 Pa. Super. 461, 514 A.2d 1374 (1986). In *Katz*, the husband requested that the trial court close the hearings pertaining to the equitable distribution of marital property over the wife's objections. The marital property included a multimillion dollar corporation that the husband had developed during the marriage. From the date of the marriage in 1974 to the date of separation in 1981, the annual income of the parties had increased from $25,000 to more than $5 million. The husband was also a "public figure" in the Philadelphia area because of his ownership of the Philadelphia 76ers.

Initially, the Superior Court's opinion reviewed opinions of other state appellate courts that had considered the accessibility of court records in divorce proceedings. These opinions recognized that in many instances the public disclosure of the details of a divorce case can embarrass and humiliate the litigants without serving any useful purpose in the community. The law permitting public access to court records is not intended to allow these records to be used for the sole purpose of gratifying

---

2. In this case, the husband is not requesting a gag order that would bar the wife from releasing information that the parties submitted to the court or from otherwise commenting on the proceedings.

private spite, promoting public scandal or mere curiosity. Consequently, these other jurisdictions have held that the public's right of access to divorce files may be limited where access would not further a legitimate interest or otherwise serve some useful public purpose.

The *Katz* opinion chose to follow this approach. It held that divorce hearings are the type of proceedings which the courts may close to protect the rights of the parties because "no legitimate purpose can be served by broadcasting the intimate details of a soured marital relationship. Similarly, the public can have little, if any, legitimate interest in the identification, valuation and distribution of private property which the marriage partners have accumulated while they lived together and cohabited. Merely because marital property has been accumulated because of the financial successes achieved by an astute businessman does not alone justify opening equitable distribution hearings to the public." *Id.* at 1379-1380.

In the present case, through his affidavit, the husband has met his burden of showing that disclosure of the detailed financial information introduced in these proceedings may cause substantial embarrassment and seriously infringe upon his right to have his personal life and family matters remain private. The only reason that the wife offers for opposing the husband's petition is that the sealing of the records may diminish the precedential value of this case, thereby frustrating the basic system of justice. As a judge and a law professor, I am impressed with the wife's concern for the orderly development of the case law. It has been my experience that most litigants place almost total emphasis on the outcome of my rulings rather than upon my legal rea-

soning. I commend the wife for her broader interest in this litigation. However, this broader interest does not serve as a basis for overcoming the husband's interests in sealing the depositions, financial records and reports that I previously described.

My 29-page memorandum allows this case to receive whatever precedential value it deserves. Ordinarily, I do not file with the prothonotary the parties' financial records, depositions, expert reports and other exhibits following the conclusion of an equitable distribution claim. These are returned to the parties or destroyed. During the ten years in which I have been deciding equitable distribution claims, I have never had a request from any member of the bar to preserve this information.

## ORDER OF COURT

On October 19, 1992, it is hereby ordered that the following portions of this divorce proceeding shall be accessible to the public:

(1) the divorce complaint and the answer to the complaint;

(2) the divorce decree;

(3) any orders of court entered in these proceedings;

(4) my August 11, 1992, equitable distribution award, together with the 29-page memorandum which accompanied this award;

(5) the parties' motions for post-trial relief; and

(6) the husband's petition to seal the record, the wife's answer to the petition, the husband's September 22, 1992, affidavit in support of the petition, and the wife's Sep-

tember 30, 1992, affidavit in support of her answer to the petition to seal the record.

It is further ordered that the remainder of the record of these proceedings is sealed and that the prothonotary shall immediately take all necessary steps to insure that there is no public access to the remainder of the record.